UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL BEYERS,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**DECISION AND ORDER**

1:18-CV-00819 EAW

---

## **INTRODUCTION**

Represented by counsel, plaintiff Michael Beyers ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 11), and Plaintiff's reply (Dkt. 13). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is denied and the Commissioner's motion (Dkt. 11) is granted.

## BACKGROUND

Plaintiff protectively filed his application for DIB on August 14, 2014. (Dkt. 7 at 60, 106).[1] In his application, Plaintiff alleged disability beginning on December 26, 2010, due to severe depression, anxiety disorder, panic disorder, mood disorder, "hypoactive labyrinth," four torn rotator cuff muscles, cubital tunnel syndrome, metabolic disorder, Raynaud syndrome, and brain aneurysm. (*Id.* at 60, 300-01). Plaintiff's application was initially denied on December 29, 2014. (*Id.* at 177-79). At Plaintiff's request, a video conference hearing was held before administrative law judge ("ALJ") Roxanne Fuller on November 9, 2016, with Plaintiff appearing in Buffalo, New York, and the ALJ presiding from Falls Church, Virginia. (*Id.* at 77-105, 189-90). On April 21, 2017, the ALJ issued an unfavorable decision. (*Id.* at 57-76). Plaintiff requested Appeals Council review; his request was denied on May 29, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-9). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

§ 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I.   **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2016. (Dkt. 7 at 62). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from December 26, 2010, the alleged onset date, through the date last insured. (*Id.*).

At step two, the ALJ found that through the date last insured, Plaintiff suffered from the severe impairments of: degenerative joint disease of the left shoulder; carpal tunnel syndrome; diabetes mellitus; bifurcation aneurysm; depression; and alcohol abuse. (*Id.* at 63). The ALJ further found that Plaintiff's medically determinable impairments of obesity, cervical spine impairment, asthma, hypertension, and hyperthyroidism were non-severe. (*Id.*).

At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.02, 11.04, 12.04, and 12.06 in reaching this conclusion. (*Id.* at 63-65).

Before proceeding to step four, the ALJ determined that through the date last insured Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [Plaintiff could] lift up to ten pounds occasionally with the left non-dominant hand; occasionally climb ramps, stairs, ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach and reach overhead with the left non-dominant hand; frequently handle objects, that is gross manipulation with both hands; frequently finger objects, that is fine manipulation with both hands; occasional exposure to moving mechanical parts and unprotected heights; occasionally operate a motor vehicle; able to perform simple, routine, and repetitive tasks; no interaction with the public; and only occasional interaction with coworkers and supervisors.

(*Id.* at 65). At step four, the ALJ found Plaintiff was unable to perform any past relevant work through the date last insured. (*Id.* at 71).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform through the date last insured, including the representative occupations of surveillance-system monitor, merchandise marker, and production assembler. (*Id.* at 71-72). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date last insured. (*Id.* at 72).

## II. The Commissioner's Determination Is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse the Commissioner's determination, arguing: (1) the ALJ erred in failing to afford controlling weight to the opinion of Plaintiff's treating psychiatrist Dr. Horacio Capote; (2) the ALJ erred in concluding that Plaintiff's severe depression did not meet or equal the severity of Listing 12.04; (3) the ALJ's finding that Plaintiff was capable of performing the "prolonged walking and standing required of work

at the light exertional level" through the date last insured was unsupported by substantial evidence; and (4) the new evidence submitted to the Appeals Council warrants remand for rehearing. (Dkt. 8-1 at 20-29). The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.

### A. Assessment of Dr. Capote's Opinion

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id.* "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule[.]" *Scitney v. Colvin*, 41 F. Supp. 3d 289, 301 (W.D.N.Y. 2014) (internal quotation omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, she must "give good reasons in [her] notice of determination or decision for the weight [she gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

In this case, Dr. Capote, Plaintiff's treating psychiatrist, completed a "Medical Treating Source Statement – Mental Impairment" form on October 26, 2016, in which he opined that Plaintiff: (1) had unlimited ability to remember work-like procedures, understand and remember very short and simple instructions, and carry out very short and simple instructions; (2) had fair ability to maintain attention for extended periods of 2 hour segments, maintain regular attendance and be punctual within customary tolerances, work in coordination with or proximity to others without being unduly distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without unduly distracting them or exhibiting behavior

extremes, respond appropriately to changes in a routine work setting, and be aware of normal hazards and take appropriate precautions; and (3) had good ability to sustain ordinary routine without special supervision. (Dkt. 7 at 776-78).

In her decision, the ALJ gave "little weight" to Dr. Capote's opinion, because (1) it was unsupported by Dr. Capote's treatment records, particularly Plaintiff's unremarkable mental status examinations and (2) it was not consistent with Plaintiff's reported daily activities. (*Id.* at 69-70). The ALJ further determined that "great weight" should be afforded to the opinions of consultative examiner Dr. Janine Ippolito and psychiatric consultant Dr. H. Tzetzo, whose opinions the ALJ found to be consistent with the medical evidence of record and, in the case of Dr. Ippolito, "based on a detailed examination." (*Id.* at 69).

The Court finds that the ALJ adequately set forth good reasons for affording Dr. Capote's opinion less than controlling weight. First, contrary to Plaintiff's contention, it was not error for the ALJ to credit Dr. Ippolito and Dr. Tzetzo over Dr. Capote. "An ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Bump v. Comm'r of Soc. Sec.*, No. 5:15-CV-1077 (GTS), 2016 WL 6311872, at *4 (N.D.N.Y. Oct. 28, 2016). "[A]n ALJ may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence." *Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015). In this case, as

the ALJ explained in detail in her decision, Plaintiff's medical records (including specifically Dr. Capote's records) consistently showed largely normal mental status examinations, with diminished concentration noted on some occasions but not on others. (*See, e.g.,* Dkt. 7 at 357, 361, 365, 368, 372, 376, 384, 395, 436). An ALJ is not required to afford controlling weight to a treating physician's opinion where it is inconsistent with his own treatment records. *See Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) ("Because [the treating physician's] medical source statement conflicted with his own treatment notes, the ALJ was not required to afford his opinion controlling weight.").

As the ALJ further noted, Dr. Ippolito's thorough examination of Plaintiff, conducted on October 24, 2014, demonstrated that Plaintiff had adequate social skills, manner of relating, and expressive and receptive language, along with normal motor behavior, fluent speech, coherent and goal-directed thought processes, intact attention and concentration, intact recent and remote memory skills, good insight and judgment, and average intellectual functioning. (*Id.* at 443-44). It was within the ALJ's discretion to conclude that Dr. Ippolito's and Dr. Tzetzo's opinions were more consistent with the evidence of record than Dr. Capote's restrictive opinion. *See Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018) ("[I]t is well-settled that a consulting psychiatric examiner's opinion may be given great weight and may constitute substantial evidence to support a decision.").

Plaintiff argues that the ALJ should not have credited Dr. Ippolito's and Dr. Tzetzo's opinions because they "grossly mischaracterized Plaintiff's reported daily activities to

make him appear far more functional than he stated. . . ." (Dkt. 8-1 at 21). Plaintiff reaches this conclusion by comparing Dr. Ippolito's summary of Plaintiff's daily activities to a form that Plaintiff submitted in connection with his application. (*See id.*). However, Dr. Ippolito's summary is not based on the form identified by Plaintiff, but instead on her own examination of and conversation with Plaintiff. (*See* Dkt. 7 at 444-45). Dr. Ippolito cannot be faulted for inconsistencies in Plaintiff's self-reports. Moreover, contrary to Plaintiff's argument, Dr. Ippolito's summary is not "terse," but specifically discusses Plaintiff's typical activities, socialization, family relationships, and hobbies. (*Id.*). The Court finds no support in the record for the conclusion that Dr. Ippolito or Dr. Tzetzo (about whom Plaintiff makes no specific argument) deliberately mischaracterized Plaintiff's reported daily activities.

The Court further rejects Plaintiff's argument that the ALJ should not have relied on Dr. Ippolito's and Dr. Tzetzo's opinions because they were issued before Plaintiff underwent surgery to remove a brain aneurysm and before "multiple unsuccessful attempts to treat Plaintiff's severe depression with electroconvulsive therapy." (Dkt. 8-1 at 22). "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015). "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). However, a medical opinion is not stale simply based on its age. A more dated opinion may constitute substantial evidence

if it is consistent with the record as a whole. *See id.* at *7 ("Dr. Liu's opinion was not stale . . . because it was consistent with Dr. Liu's clinical examination and with the record as a whole.").

Here, while Plaintiff underwent additional treatment following Dr. Ippolito's examination and Dr. Ippolito's and Dr. Tzetzo's issuance of their opinions, Plaintiff has pointed to no evidence suggesting that his condition significantly deteriorated so as to render those opinions stale. To the contrary, Plaintiff acknowledges that he had been referred for electroconvulsive therapy "shortly prior to [Dr. Ippolito's] examination" (Dkt. 8-1 at 22 (emphasis added)). Moreover, Plaintiff continued to have largely normal status examinations after Dr. Ippolio and Dr. Tzetzo opined on his condition. (*See, e.g.,* Dkt. 7 at 763 (at examination on August 11, 2016, Plaintiff had a depressed mood and constricted affect, but was oriented to person, place, and time and had stable attention and concentration, linear and goal-directed thought processes, appropriate fund of knowledge, and intact memory)). In addition, and as discussed in more detail later in this Decision and Order, the medical evidence of record shows that Plaintiff recovered well from his aneurysm surgery without lasting effects. The record thus does not support the conclusion that Plaintiff's condition deteriorated so as to render Dr. Ippolito's and Dr. Tzetzo's opinions stale. *See Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 911 (W.D.N.Y. 2018) (rejecting argument that examining physician's opinion was stale where "medical evidence in the record documenting clinical examinations that occurred subsequent to [the physician's] examination support[ed] [the physician's] opinion").

Finally, it was also appropriate for the ALJ to consider the consistency between Dr. Capote's opinion and Plaintiff's reported activities of daily living. *See Abarzua v. Berryhill*, 754 F. App'x 70, 71 (2d Cir. 2019) (holding that ALJ appropriately discounted treating physician's opinion where it was "contradicted by substantial medical evidence, as well as [the plaintiff's] activities of daily living"). Here, the ALJ appropriately noted that, for example, Dr. Capote's opinion that Plaintiff was unable to be aware of normal hazards or take appropriate precautions was inconsistent with Plaintiff's report that he was able to drive without issue. (*See* Dkt. 7 at 70, 96). The Court finds no error in the ALJ's conclusion that the restrictions identified by Dr. Capote conflicted with Plaintiff's own reports of his abilities and, for all the reasons set forth above, concludes that the ALJ was not required to afford Dr. Capote's opinion controlling weight.

### B. Consideration of Listing 12.04

Plaintiff next argues that his severe depression meets or equals the requirements of Listing 12.04. However, this argument depends on Plaintiff's assertion that the ALJ should have credited Dr. Capote's opinion and rejected Dr. Ippolito's and Dr. Tzetzo's opinions. (*See* Dkt. 8-1 at 24 (arguing that "[t]he record when characterized accurately shows that Plaintiff has had very severe depression which has been resistant to medication treatment")). However, for the reasons discussed above, the Court finds that the ALJ was within her discretion to weigh the opinion evidence as she did. Based on the ALJ's permissible weighing of the evidence, there is no plausible argument that Plaintiff's mental

impairments satisfied or equaled the requirements of Listing 12.04. Accordingly, this argument does not warrant reversal or remand.

### C. Ability to Perform Walking and Standing Requirements of Light Work

As set forth above, the ALJ found that Plaintiff was, through the date last insured, capable of a limited range of light work. Light work requires "a good deal of walking or standing . . ." 29 C.F.R. § 404.1567(b). Plaintiff contends that substantial evidence does not support the conclusion that he is capable of fulfilling these requirements, because he testified that he has frequent dizzy spells. (Dkt. 8-1 at 26). This argument lacks merit.

No medical expert opined that Plaintiff's claimed dizzy spells would interfere with his ability to walk or stand. Instead, as the ALJ noted, consultative examiner Dr. Samuel Balderman performed a detailed examination of Plaintiff and concluded only that Plaintiff had "mild limitations in reaching, pushing, and pulling due to left shoulder pain." (Dkt. 7 at 459). Dr. Balderman's opinion is substantial evidence for the ALJ's conclusions regarding Plaintiff's ability to stand and walk.

Plaintiff argues that Dr. Balderman's opinion was incomplete, because Dr. Balderman noted that "[c]oncerning the claimant's intracerebral aneurysm, the report from the angiogram should be reviewed. Also, the report from the consulting neurosurgeon should be reviewed for more clinical correlation." (*See id.* at 445-46). However, Plaintiff has not pointed to any medical evidence record tying his claimed dizzy spells to his aneurysm. To the contrary, on January 26, 2015, Plaintiff's physicians noted that he had been "ambulating well with no neurologic deficits" since undergoing surgery for the

aneurysm. (Dkt. 7 at 542). On August 1, 2016, at another follow-up appointment, Plaintiff reported no "transient loss of vision, speech, weakness or sensory loss," and he was observed to be "doing very well" post-surgery. (*Id.* at 555). Moreover, when asked by the ALJ about side effects of his aneurysm, Plaintiff identified only headaches. (*Id.* at 91-92). He mentioned dizziness as a side effect of his medications, not as a result of his aneurysm. (*Id.* at 92-93). On these facts, there is no basis to conclude that Dr. Balderman's caveat regarding Plaintiff's aneurysm rendered his opinion an inappropriate basis for the ALJ's RFC finding.

Moreover, the ALJ was not obliged to accept Plaintiff's testimony that he suffered dizziness while walking. "[A]n ALJ 'is not required to accept the claimant's subjective complaints without question; [s]he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'" *Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 763 (S.D.N.Y. 2018) (quoting *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015)). Here, that ALJ found Plaintiff's subjective complaints not fully credible (*see* Dkt. 7 at 67), and Plaintiff has not identified any error in the ALJ's credibility assessment. For all these reasons, the Court finds the ALJ's determination that Plaintiff could perform the walking and standing requirements of light work through the date last insured adequately supported.

### D. New Evidence Submitted to the Appeals Council

Plaintiff's final argument is that this matter should be remanded pursuant to 42 U.S.C. § 405(g) based on new and material evidence submitted to the Appeals Council. In

particular, Plaintiff contends that medical records from the DENT Neurologic Institute from November 18, 2016, to June 15, 2017, demonstrate that Plaintiff's headaches are more severe than the ALJ appreciated. (Dkt. 8-1 at 28-29).

The Appeals Council must consider "new" and "material" evidence if it "relates to the period on or before the date of the administrative law judge hearing decision" and there is a "reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely based on timing. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "For example, subsequent evidence of the severity of a claimant's condition may demonstrate that 'during the relevant time period, [the claimant's] condition was far more serious than previously thought.'" *Newbury v. Astrue*, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (quoting *Pollard*, 377 F.3d at 193)). However, evidence that does not provide additional information about the claimant's functioning during the relevant time period, but instead relates to his or her functioning at some later point in time, need not be considered by the Appeals Council. *See Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999).

In this case, the Appeals Council found that the medical records in question did not relate to the relevant time period and did not affect the decision about whether Plaintiff became disabled prior to his date last insured. (Dkt. 7 at 6). The Court finds no error in this determination. While the treatment notes submitted to the Appeals Council do contain a claim by Plaintiff that he had suffered from headaches since undergoing surgery in

December 2014, this was not a new complaint by Plaintiff. Plaintiff told the ALJ at his hearing that he had had a headache "almost all the time" since December 31, 2014. (*Id.* at 87). The Appeals Council was correct that this claim by Plaintiff was not material to the determination of Plaintiff's claim. *See Evans v. Colvin*, 649 F. App'x 35, 38 (2d Cir. 2016) (finding "no reasonable possibility that the ALJ would have reached a different conclusion based upon [duplicative] evidence, rendering it immaterial to the relevant period").

The remainder of the additional medical information provided to the Appeals Council related to Plaintiff's then-current functioning, which was outside the relevant time period. Nothing in the records suggests that they are meant to be retrospective or to provide insight into Plaintiff's functioning prior to his date last insured in June 2016. The Appeals Council thus did not err in declining to consider this information. *See Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 285-86 (W.D.N.Y. 2018) (Appeals Council did not err in declining to consider medical source statement that "[did] not indicate that it [was] meant to provide a retrospective assessment of Plaintiff's functioning" or "clearly refer to the relevant period of disability"). The Court finds no basis for remand in the Appeals Council's consideration of the supplemental medical records produced by Plaintiff.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: January 21, 2020
Rochester, New York